**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ADRIAN ROSALIO REYES OVALLE;<br>JUAN MARIO REYES OVALLE;<br>MIGUEL ANGEL REYES OVALLE;<br>LUIS MIGUEL ROQUE OVALLE;<br>BENJAMIN RUIZ VAZQUEZ; and<br>PATRICK ULUPANO,<br>　　　　　　　Plaintiffs,<br>　　　　v.<br>HARRIS BLACKTOPPING, INC. d.b.a.<br>　　HARRIS PAVING;<br>JAMES W. HARRIS, JR.; HARRY A.<br>HARRIS; and CHARLES S. HARRIS,<br>　　　　　Defendants | CIVIL ACTION NO. 2:21-cv-03591 |

## FIRST AMENDED COMPLAINT

Plaintiffs Adrian Rosalio Reyes Ovalle, Juan Mario Reyes Ovalle, Miguel Angel Reyes Ovalle, Luis Miguel Roque Ovalle, Benjamin Ruiz Vazquez, and Patrick Ulupano (collectively, "Plaintiffs"), by and through undersigned counsel, bring this action against Defendants Harris Blacktopping, Inc. d.b.a. Harris Paving ("Defendant Harris Blacktopping"), James W. Harris, Jr., Charles S. Harris, and Harry A. Harris (collectively, "Defendants"), and hereby allege as follows:

## NATURE OF ACTION

1.　　Defendants employed Plaintiffs between 2014 and 2020.

2.　　During that time, Defendants failed to pay Plaintiffs for all hours worked and failed to pay overtime when required by law.

3.　　Defendants discriminated against Plaintiffs. On the basis of race, color, and/or national origin, Plaintiffs were subjected to unlawful and unfavorable pay practices, were

assigned lower-paying and more demanding tasks, and were harassed with profane and demeaning verbal abuse while at work.

4.      Following certain Plaintiffs' separation from Defendants' employ, Defendants contacted other companies with whom those Plaintiffs began working to encourage those companies to discharge Plaintiffs. Defendants successfully convinced at least one company to refuse to work with Plaintiffs.

5.      Plaintiffs seek relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.*, (the "FLSA"), the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101, *et seq.*, (the "PMWA"), the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.*, (the "WPCL"), the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e-2(a), and Pennsylvania common law unjust enrichment, breach of contract, intentional interference with contractual relations, and negligent misrepresentation.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7.      This Court has supplemental jurisdiction over Plaintiffs' state law claims because those claims derive from a common nucleus of operative facts as the FLSA claims. 28 U.S.C § 1367.

8.      This Court has jurisdiction over Plaintiffs' 42 U.S.C. § 1981 claims under 28 U.S.C. §§ 1331, 1343.

9.      This Court has jurisdiction over Plaintiffs' Title VII claims pursuant to 28 U.S.C. § 1331.

10.     Plaintiffs Adrian Rosalio Reyes Ovalle, Juan Mario Reyes Ovalle, Luis Miguel Roque Ovalle, and Benjamin Ruiz Vazquez have exhausted the administrative remedies set forth under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, as follows:

     a.     On or about February 24, 2021, the aforementioned Plaintiffs each filed Charges of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant Harris Blacktopping.

     b.     On August 30, 2021, the EEOC issued Notices of Right to Sue to the aforementioned Plaintiffs. *See* Exhs. A-D.

     c.     Plaintiffs filed this action within 90 days of receipt of the Notices.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district. Defendants are incorporated in and conduct business in this judicial district.

## PARTIES

**Plaintiffs**

**Adrian Rosalio Reyes Ovalle**

12.     Adrian Rosalio Reyes Ovalle ("Plaintiff Adrian Reyes") worked for Defendant Harris Blacktopping from approximately 2014 until September 1, 2020.

13.     Plaintiff Adrian Reyes is Latino, brown-skinned, and of Mexican origin.

14.     Plaintiff Adrian Reyes was hired to work as a machine operator.

**Juan Mario Reyes Ovalle**

15.     Juan Mario Reyes Ovalle ("Plaintiff Juan Reyes") worked for Defendant Harris Blacktopping from approximately 2017 to October 2020.

16.     Plaintiff Juan Reyes is Latino, brown-skinned, and of Mexican origin.

**Miguel Angel Reyes Ovalle**

17.    Miguel Angel Reyes Ovalle ("Plaintiff Miguel Reyes") worked for Defendant Harris Blacktopping from approximately 2017 to December 2019.

18.    Plaintiff Miguel Reyes is Latino, brown-skinned, and of Mexican origin.

**Luis Miguel Roque Ovalle**

19.    Luis Miguel Roque Ovalle ("Plaintiff Luis Roque") worked for Defendant Harris Blacktopping from approximately May 2020 until October 2, 2020.

20.    Plaintiff Luis Roque is Latino, brown-skinned, and of Mexican origin.

**Benjamin Ruiz Vazquez**

21.    Benjamin Ruiz Vazquez ("Plaintiff Benjamin Ruiz") worked for Defendant Harris Blacktopping from approximately 2019 to October 2020.

22.    Plaintiff Benjamin Ruiz is Latino, brown-skinned, and of Mexican origin.

**Patrick Ulupano**

23.    Patrick Ulupano ("Plaintiff Patrick Ulupano") worked for Defendant Harris Blacktopping from approximately 2015 to December 2018.

24.    Plaintiff Patrick Ulupano is a Pacific Islander, brown-skinned, and of Samoan origin.

25.    Plaintiff Patrick Ulupano is the brother of the wife of Plaintiff Adrian Reyes. Defendants and their agents perceived Plaintiff Patrick Ulupano as related to Plaintiff Adrian Reyes, and of the same national origin—Mexican—as Plaintiff Adrian Reyes.

**Defendants**

**Harris Blacktopping, Inc. d.b.a. Harris Paving**

26.    Defendant Harris Blacktopping is a Pennsylvania business corporation with its registered address at 869 Sandy Run Road, Yardley PA 19067 and a Department of State Corporation Bureau Entity Number of 958178.

27.    Defendant Harris Blacktopping conducts business out of an office in Washington Crossing, Pennsylvania and a workshop in Morrisville, Pennsylvania. It operates throughout Bucks County, Pennsylvania, and the surrounding areas.

28.    Defendant Harris Blacktopping employs individuals in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

29.    Upon information and belief, the annual gross volume of sales made or business done by Defendant Harris Blacktopping exceeds $500,000.

30.    At all times relevant to this lawsuit, Defendant Harris Blacktopping was acting by and through its principals, agents, servants, and employees including, but not limited to, Defendants James W. Harris, Jr., Harry A. Harris, and Charles S. Harris.

**James W. Harris, Jr.**

31.    James W. Harris, Jr. ("Defendant James Harris") resides in Bucks County, Pennsylvania.

32.    At all relevant times, Defendant James Harris maintained a principal business address in Bucks County.

33.    Defendant James Harris is the President of Defendant Harris Blacktopping.

34.     At all times relevant to this lawsuit, Defendant James Harris was acting on his own behalf and/or on behalf of Defendant Harris Blacktopping.

35.     Defendant James Harris is an employer under 29 U.S.C. § 203(d), 43 P.S. §§ 260.2a; 333.103(g), and regulations promulgated thereunder, and is jointly and severally liable with Defendants Harris Blacktopping, Harry A. Harris, and Charles S. Harris.

**Harry A. Harris**

36.     Harry A. Harris ("Defendant Harry Harris") resides in Bucks County, Pennsylvania.

37.     At all relevant times, Defendant Harry Harris maintained a principal business address in Bucks County.

38.     Defendant Harry Harris is the Vice President of Defendant Harris Blacktopping.

39.     At all times relevant to this lawsuit, Defendant Harry Harris was acting on his own behalf and/or on behalf of Defendant Harris Blacktopping.

40.     Defendant Harry Harris is an employer under 29 U.S.C. § 203(d), 43 P.S. §§ 260.2a; 333.103(g), and regulations promulgated thereunder, and is jointly and severally liable with Defendants Harris Blacktopping, James Harris, and Charles S. Harris.

**Charles S. Harris**

41.     Charles S. Harris ("Defendant Charles Harris") resides in Bucks County, Pennsylvania.

42.     At all relevant times, Defendant Charles Harris maintained a principal business address in Bucks County.

43.     Defendant Charles Harris is the Treasurer of Defendant Harris Blacktopping.

44.    At all times relevant to this lawsuit, Defendant Charles Harris was acting on his own behalf and/or on behalf of Defendant Harris Blacktopping.

45.    Defendant Charles Harris is an employer under 29 U.S.C. § 203(d), 43 P.S. §§ 260.2a; 333.103(g), and regulations promulgated thereunder, and is jointly and severally liable with Defendants Harris Blacktopping, Harry Harris, and James Harris.

## STATEMENT OF FACTS

46.    Defendant Harris Blacktopping performs asphalt paving, construction, landscaping, and resurfacing services for highways, roadways, parking lots, tennis courts, and driveways, among other tasks.

47.    Defendant Harris Blacktopping bids on and accepts contracts throughout southeastern Pennsylvania and New Jersey.

48.    Defendant Harris Blacktopping pays workers at different rates depending on the task they perform and the contract they are completing.

a.    Workers operating large machinery are paid at a significantly higher hourly rate than workers who perform manual labor like shoveling and raking asphalt.

b.    Workers performing contracts for local governments, which are covered by the Prevailing Wage Act ("PWA"), 43 P.S. § 165, *et seq*., are also paid at significantly higher hourly rates.

49.    Operating large machinery is significantly less physically demanding than performing manual labor. The inside of certain machines are air-conditioned.

50.    Each day, employees of Defendant Harris Blacktopping must travel to the worksites, wherever they are located, to work for the day.

51.    Plaintiffs and Defendants agreed that Defendants would provide Plaintiffs with paid vacation days each year, and that Defendants would pay Plaintiffs for unused vacation days at the point Plaintiffs separated from employment at Harris Blacktopping.

**Wage Violations**

52.    Plaintiffs recorded hours worked by handwriting them in notebooks or on timecards.

53.    Plaintiffs' records of hours worked typically included the location of the job and whether the hours were performed on a PWA contract.

54.    At the end of each week, Plaintiffs submitted their timesheets to Defendant Harris Blacktopping.

55.    Defendants paid Plaintiffs at various hourly rates, depending on the job assigned to them.

　　　a.    Defendants assigned each Plaintiff an individual base hourly rate of pay (the "base rate").

　　　　　i.   Defendants raised employees' base rates slowly over time.

　　　　　ii.  Defendants agreed to pay Plaintiffs this base rate when Plaintiffs performed manual labor on weekdays on contracts not covered by the PWA.

　　　b.    Defendants agreed to pay Plaintiffs at an elevated hourly rate of pay when they operated machinery on weekdays on contracts not covered by the PWA (the "operator rate").

　　　c.    Defendants agreed to pay Plaintiffs at various elevated hourly rates of pay when they worked on contracts on weekdays covered by the PWA.

i.   When Plaintiffs performed manual labor on contracts covered by the PWA, Defendants agreed to pay Plaintiffs at elevated hourly rates mandated by the PWA (a "labor PWA rate").

ii.   When Plaintiffs operated machinery on contracts covered by the PWA, Defendants agreed to pay Plaintiffs at elevated hourly rates mandated by the PWA (an "operator PWA rate").

iii.   Upon information and belief, operator PWA rates were always higher than labor PWA rates.

56.   Defendants sometimes paid Plaintiffs at their individual base rates for hours that should have been compensated at the operator rate, a labor PWA rate, or an operator PWA rate.

57.   Defendants sometimes paid Plaintiffs at a labor PWA rate for hours that should have been compensated at an operator PWA rate.

58.   Although Plaintiffs recorded their hours worked on timecards and submitted them to Defendants, when Plaintiffs received their pay, often several hours of wages per week were missing.

59.   Plaintiffs typically worked more than forty (40) hours in a workweek.

60.   Defendants typically failed to pay an overtime premium of one and one-half (1½) times Plaintiffs' regular rate of pay for hours worked over forty (40) in a workweek.

61.   Defendants expected Plaintiffs to work on weekends.

a.   On weekends, Defendants instructed Plaintiffs not to record their hours.

b.   On weekends, Defendants paid Plaintiffs at a daily rate, rather than an hourly rate. Defendants did not tell Plaintiffs in advance how much they would be paid per day on the weekend.

    c.      For weekend work, Plaintiffs' effective hourly rate was below their assigned base rate.

    d.      Defendants paid Plaintiffs for work performed on weekends in cash.

    e.      The hours Plaintiffs worked on weekends routinely caused Plaintiffs to work over forty (40) hours per week. Plaintiffs were not paid an overtime premium for these hours.

    f.      Upon information and belief, weekend hours worked by Plaintiffs were not recorded in Defendants' payroll system.

62.   Defendants decided when workdays "officially" began and ended.

    a.      Plaintiffs were expected to perform work for Defendants before and after the workday "officially" began.

    b.      Before the workday "officially" began, Defendants required Plaintiffs to clean and prepare machinery.

    c.      Before the workday "officially" began, Defendants sometimes required Plaintiffs to arrive at the Harris Blacktopping workshop in Morrisville, load trucks with equipment and materials, and then drive to a worksite.

    d.      After the workday "officially" ended, Plaintiffs were sometimes required to drive back to the Harris Blacktopping workshop in Morrisville and unload materials at the office.

    e.      Defendants instructed Plaintiffs not to record hours worked before the workday "officially" began and after the workday "officially" ended.

    f.      Plaintiffs were not compensated for work they performed before the workday "officially" began or after the workday "officially" ended.

63.    Some worksites were located more than an hour-and-a-half away from the Harris Blacktopping workshop in Morrisville and from Plaintiffs' homes in Bucks County.

64.    Plaintiffs were not compensated for the time they spent driving to and from worksites each day, regardless of whether they performed work before travel to, or after travel from, the day's worksite.

## Discrimination

### Disparate Treatment

65.    Plaintiffs experienced unlawful and unfavorable pay practices, were assigned lower-paying and more demanding tasks, and were subjected to profane and demeaning harassment while at work. Plaintiffs were treated in these ways on the basis of protected characteristics, including race, color, and/or national origin.

66.    Defendants did not pay Plaintiffs for all hours worked. On many occasions, hours were missing from paychecks. *See supra* ¶ 58. Upon information and belief, Defendants compensated non-Latino, white, and/or American workers for all hours worked.

67.    Plaintiffs typically earned a lower base rate of pay than non-Latino, white, and/or American workers. *See supra* ¶ 55.a.

68.    Upon information and belief, Defendants typically gave Plaintiffs base rate pay raises at a slower rate than non-Latino, white, and/or American workers. *See supra* ¶ 55.a.i.

69.    Defendants typically did not pay Plaintiffs one and a one-half (1½) times their normal rate of compensation for hours worked over forty (40) in a workweek. *See supra* ¶ 60. Upon information and belief, Defendants paid workers who were non-Latino, white, and/or American one and a one-half (1½) times their normal rate of compensation for hours worked over forty (40) in a workweek more frequently than they paid it to Plaintiffs.

11

70.     Defendants assigned Plaintiffs to work on contracts covered by the PWA less frequently than they assigned non-Latino, white, and/or American employees to work on such contracts.

71.     Defendants sometimes failed to pay Plaintiffs at the correct labor PWA rate or operator PWA rate for work performed on contracts covered by the PWA. *See supra* ¶¶ 56-57. Upon information and belief, Defendants paid the correct rates to workers who were non-Latino, white, and/or American, who worked on jobs covered by the PWA.

72.     Defendants assigned Plaintiffs to work on machinery less frequently than they assigned non-Latino, white, and/or American employees to work on machinery.

73.     Defendants sometimes failed to pay Plaintiffs who worked on machinery at the elevated operator rate. *See supra* ¶ 55.b. Upon information and belief, Defendants paid the correct rates to workers who were non-Latino, white, and/or American who worked as operators more frequently than they paid the correct rates to Plaintiffs.

74.     When some Plaintiffs asked to work as operators, Defendants informed them that they were not permitted to do operating work.

75.     Plaintiffs were either qualified for operator jobs, or would have been qualified for operator jobs had they received training that was only offered to non-Latino, white, and/or American workers.

76.     When Defendants hired Plaintiff Adrian Reyes, Defendants promised him that he would work in an operator position.

77.     However, once Plaintiff Adrian Reyes began working for Defendants, Defendants assigned him tasks that consisted of manual labor, instead of the duties of operating machinery.

78.    Upon information and belief, non-Latino, white, and/or American workers hired as operators were generally assigned duties operating machinery.

79.    Defendants required Plaintiffs to work on weekends. Defendants typically did not require non-Latino, white, and/or American employees to work on weekends.

80.    Defendants compensated Plaintiffs for weekend work at a flat rate per day, which amounted to an hourly rate below Plaintiffs' base rates. *See supra* ¶¶ 61.a-f. Upon information and belief, non-Latino, white, and and/or American employees were not paid daily rates that amounted to hourly rates below their hourly base rates.

81.    Plaintiffs were subject to different timekeeping requirements than non-Latino, white, and/or American employees, which caused Plaintiffs to be paid less than non-Latino, white, and/or American employees.

82.    To reach jobsites from Plaintiffs' homes or from the Harris Blacktopping workshop in Morrisville, Plaintiffs sometimes had to drive up to three (3) hours per day. *See supra* ¶ 63.

83.    Defendants did not compensate Plaintiffs for time spent traveling to and from worksites. *See supra* ¶ 64.

84.    Upon information and belief, Defendants permitted non-Latino, white, and/or American workers to drive to the Harris Blacktopping main office and begin recording their hours before traveling to worksites.

85.    Upon information and belief, Defendants compensated non-Latino, white, and/or American for their travel time from the main office to worksites.

86.     Defendants permitted non-Latino, white, and/or American workers to begin each season's work earlier in the year and therefore permitted those employees to work a greater number of hours than Latino, brown-skinned, and/or Mexican workers.

**Hostile Work Environment**

87.     Defendants made Plaintiffs perform demanding, physical labor on asphalt, in the sun, during the summers, without lunch or water breaks. Theses shifts sometimes lasted more than ten (10) consecutive hours.

88.     Latino, brown-skinned, and/or Mexican workers suffered from heat stroke and fainted as a result of these work conditions on multiple occasions.

89.     Defendants allowed non-Latino, white, and/or American workers to take lunch breaks and multiple additional breaks throughout the day.

90.     While Plaintiffs performed manual labor in the sun, non-Latino, white, and/or American workers would rest in the air-conditioned cabs of machines.

91.     Defendants assigned non-Latino, white, and/or American workers significantly less manual labor than they assigned to Plaintiffs. Instead, non-Latino, white, and/or American workers operated the machines.

92.     Defendants and/or non-Latino, white, and/or American coworkers frequently subjected Plaintiffs to degrading and offensive comments, profanity, insults, and yelling.

a.      Plaintiffs were repeatedly called "border hoppers" and "motherfuckers."

b.      Non-Latino, white, and/or American workers told Plaintiffs that they "wanted to tell Trump about" Plaintiffs.

c.      When police drove past worksites, non-Latino, white, and/or American workers pointed at Plaintiffs and yelled to the police: "They're here!"

14

      d.      Non-Latino, white, and/or American workers repeatedly told Plaintiffs that the police were looking for them.

      e.      When Plaintiffs were occasionally permitted to operate machinery, the non-Latino, white, and/or American workers accused Plaintiffs of "stealing their jobs."

93.    Defendants were frequently present on job sites and witnessed this verbal abuse.

94.    When Defendants observed this verbal abuse, they laughed alongside the non-Latino, white, or American workers who were perpetrating the abuse.

95.    Defendants did not discipline workers who engaged in verbal abuse against Plaintiffs.

**Retaliation**

96.    Defendants did not have a formal process through which employees could make complaints about discriminatory treatment on the basis of race, skin color, and/or national origin.

97.    In fact, Defendants never communicated any means, formal or informal, through which employees could report discriminatory treatment.

98.    On several occasions, Plaintiffs complained to Defendants about discriminatory treatment.

99.    On all but one occasion, Defendants did not take any action in response to Plaintiffs' complaints.

100.  However, in one instance, Defendants responded by assigning one of Plaintiffs to an even less desirable job.

101.  Plaintiffs understood this reassignment as retaliation for complaining about mistreatment on the basis of race, skin color, and/or national origin.

**Plaintiffs' Discharge and Defendants' Subsequent Conduct**

102.   Defendants discharged Plaintiff Adrian Reyes in September 2020. Shortly thereafter, Plaintiffs Juan Reyes, Benjamin Ruiz, and Luis Roque ceased working for Defendant Harris Blacktopping because of disparate pay and a continued and escalating hostile work environment.

103.   Although Defendants and Plaintiffs had previously agreed that Defendants would pay Plaintiffs for unused vacation hours when Plaintiffs left Defendants' employ, Defendants did not pay Plaintiffs for their unused vacation hours.

104.   Defendants contacted multiple landscaping and construction companies with whom Plaintiffs had found work, including Blair Corporation. Defendants told those companies not to work with Plaintiffs.

105.   Upon information and belief, Defendants made these calls for the purpose of damaging Plaintiffs' ability to work for these third party companies.

106.   Defendants' efforts were successful with respect to Blair Corporation. After being contacted by Defendants, Blair Corporation refused to work with Plaintiffs.

**FIRST CAUSE OF ACTION**
**Violations of the Fair Labor Standards Act**
**All Plaintiffs Against All Defendants**

107.   All previous paragraphs are incorporated as though fully set forth herein.

108.   The Fair Labor Standards Act ("FLSA") requires that covered employees be compensated at a minimum hourly wage of $7.25. 29 U.S.C. § 206(a)(1).

109.   The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed. 29 U.S.C. § 207(a)(1).

110.  Defendants are subject to the wage requirements of the FLSA because they are "employers" under 29 U.S.C. § 203(d).

111.  At all relevant times, Defendants are "employers" engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203.

112.  At all relevant times, Plaintiffs are covered employees entitled to the above-described FLSA protections. 29 U.S.C. § 203(e).

113.  Plaintiffs are entitled to be paid at least $7.25 for all hours worked. 29 U.S.C. § 206(a)(1); 29 C.F.R. § 778.112.

114.  Plaintiffs are entitled to be paid overtime compensation for all hours worked over forty in a workweek. 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.112.

115.  Defendants knowingly failed to compensate Plaintiffs for all hours worked, in violation of 29 U.S.C. § 206(a)(1) and 29 C.F.R. § 778.112.

116.  Defendants knowingly failed to compensate Plaintiffs at a rate of one-and-one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

117.  Upon information and belief, Defendants failed to make, keep, and preserve complete records with respect to Plaintiffs sufficient to determine wages, hours, and other conditions of employment in violation of the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2(c), 516.5(a), 516.6(a)(1).

118.  In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

119.  Defendants failed to comply in good faith with the FLSA.

120.  Pursuant to 29 U.S.C. § 216.6(b), Defendants are liable Plaintiffs for unpaid wages, liquidated damages, court costs, and attorneys' fees incurred in recovering the unpaid wages.

### SECOND CAUSE OF ACTION
**Violations of the Pennsylvania Minimum Wage Act**
**All Plaintiffs Against All Defendants**

121.  All previous paragraphs are incorporated as though fully set forth herein.

122.  The Pennsylvania Minimum Wage Act of 1968 ("PMWA") requires that covered employees be compensated for all hours worked. 43 P.S. § 333.104(a); 34 Pa. Code § 231.21(b).

123.  The PMWA also requires that covered employees be compensated for all hours worked over forty (40) hours per week at a rate not less than one and one-half (1½) times the regular hourly rate at pay at which he is employed. 43 P.S. § 333.104(c); 34 Pa. Code § 231.41.

124.  Defendants are subject to the wage requirements of the PMWA because they are employers under 43 P.S. § 333.103(g).

125.  Defendants' compensation scheme that is applicable to Plaintiffs failed to comply with 43 P.S. § 333.104 and 34 Pa. Code § 231.41.

126.  Defendants failed to accurately track all of the hours that Plaintiffs worked in violation of 43 P.S. § 333.108 and 34 Pa. Code § 231.31.

127.  As a consequence of the Defendants' violations of their rights under the PMWA, Plaintiffs are entitled to their unpaid wages, along with attorneys' fees and costs of the court, pursuant to 43 P.S. § 333.113.

**THIRD CAUSE OF ACTION**
**Violations of the Pennsylvania Wage Payment and Collection Law**
**All Plaintiffs Against All Defendants**

128.  All previous paragraphs are incorporated as though fully set forth herein.

129.  The Pennsylvania Wage Payment and Collection Law ("WPCL") requires employers timely pay all wages earned to their employees on a regularly-scheduled payday. 43 P.S. § 260.3(a).

130.  Defendants failed to pay Plaintiffs all of their wages on a regularly-scheduled payday in violation of 43 P.S. § 260.3(a).

131.  The WPCL requires employers to notify employees of the rate of pay at the time of hiring, and to notify employees of a change in the pay rate prior to the time of the change. 43 P.S. § 260.4.

132.  Defendants paid Plaintiffs at various rates without notifying Plaintiffs of changes in the pay rates prior to the time of the change in violation of 43 P.S. § 260.4.

133.  The WPCL provides that "[w]here wages remain unpaid for thirty days beyond the regularly scheduled payday . . . and no good faith contest or dispute of any wage claim including the good faith assertion of a right to set-off or counter-claim exists accounting for such non-payment, the employe[e] shall be entitled to claim, in addition [to the wages owed], as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater." 42 P.S. § 260.10.

134.  Defendants failed to pay Plaintiffs for all hours worked, and those wages remain unpaid for more than thirty (30) days.

135.  Defendants have no good faith reason for withholding any wages owed to Plaintiffs.

136.  As a consequence of the Defendants' violations of Plaintiffs' rights under the WPCL, Plaintiffs are entitled to claim unpaid wages and liquidated damages of twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater, pursuant to 43 P.S. §§ 260.9a-260.10.

137.  Plaintiffs are entitled to reasonable attorneys' fees under 43 P.S. § 260.9a(f).

### FOURTH CAUSE OF ACTION
### Violations of the Civil Rights Act of 1866 as amended (Disparate Treatment)
### All Plaintiffs Against All Defendants

138.  All previous paragraphs are incorporated as though fully set forth herein.

139.  Defendants engaged in unlawful discrimination in violation of the Civil Rights Act of 1866 as amended. 42 U.S.C. § 1981.

140.  Contracts of employment incorporate provisions required therein by federal and state law.

141.  Plaintiffs are Latino, non-white, and/or of Mexican origin.

142.  Defendants offered inferior terms and conditions of employment to Plaintiffs and other workers who were Latino, non-white, and/or of Mexican origin.

143.  Defendants intentionally deprived Plaintiffs of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendants, in violation of 42 U.S.C. § 1981.

144.  In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Plaintiffs.

145.  Plaintiffs are entitled to compensatory damages, punitive damages, and attorneys' fees resulting from Defendants' denial of their rights to make and enforce contracts.

**FIFTH CAUSE OF ACTION**
**Violations of the Civil Rights Act of 1866 as amended (Hostile Work Environment)**
**All Plaintiffs Against All Defendants**

146.  All previous paragraphs are incorporated as though fully set forth herein.

147.  Defendants engaged in unlawful discrimination in violation of the Civil Rights Act of 1866 as amended. 42 U.S.C. § 1981.

148.  Contracts of employment incorporate provisions required therein by federal and state law.

149.  Plaintiffs are Latino, non-white, or of Mexican origin.

150.  Defendants and the agents demeaned, degraded, insulted, and threatened Plaintiffs based on their race and/or color. The hostile work environment was severe and pervasive based on the nature of the harassment, including egregious statements made by employees related to Plaintiffs' race and/or color.

151.  Defendants intentionally deprived Plaintiffs of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendants, in violation of 42 U.S.C. § 1981.

152.  In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Plaintiffs.

153.  Plaintiffs are entitled to compensatory damages, punitive damages, and attorneys' fees resulting from Defendants' denial of their rights to make and enforce contracts.

**SIXTH CAUSE OF ACTION**
**Breach of Contract**
**All Plaintiffs Against All Defendants**

154.  All previous paragraphs are incorporated as though fully set forth herein.

21

155.  Defendants entered into contracts with Plaintiffs and each party's acceptance was supported by good and valuable consideration. Plaintiffs agreed to provide labor to Defendants. Defendants agreed to compensate Plaintiffs at agreed upon and legally mandated wage rates and to pay Plaintiffs for any unused vacation time.

156.  Plaintiffs fulfilled their contractual obligations by performing labor for Defendants.

157.  Defendants breached their contractual obligations by failing to pay Plaintiffs for all hours worked, by failing to pay overtime compensation at the hourly rate required by law for hours worked in excess of forty (40) in a week, by failing to compensate Plaintiffs at rates otherwise required by law, and by failing to pay Plaintiffs their unused vacation time at the termination of their employment with Defendants

158.  Because Defendants breached the contract, Plaintiffs suffered financial losses.

159.  Plaintiffs are entitled to monetary damage sufficient to place them in the financial position they would have been in but for Defendants' breach.

**SEVENTH CAUSE OF ACTION**
**Breach of Contract**
**Plaintiff Adrian Reyes Against All Defendants**

160.  All previous paragraphs are incorporated as though fully set forth herein.

161.  Plaintiff Adrian Reyes and Defendants agreed that Plaintiff Adrian Reyes would perform operator duties and be compensated at the operator rate.

162.  Plaintiff Adrian Reyes fulfilled his contractual obligations by performing tasks Defendants assigned him to complete.

163.  Defendants breached their duties by assigning Plaintiff Adrian Reyes primarily manual labor duties, and compensating him at the lower wage rate reserved for manual labor.

164.  Because Defendants breached the contract, Plaintiff Adrian Reyes suffered financial losses.

165.  Plaintiff Adrian Reyes is entitled to monetary damage sufficient to place him in the financial position he would have been in but for Defendants' breach.

### EIGHTH CAUSE OF ACTION
**Violations of Pennsylvania Common Law for Unjust Enrichment**
**All Plaintiffs Against All Defendants**

166.  All previous paragraphs are incorporated as though fully set forth herein.

167.  Defendants have received and benefitted from the uncompensated labor of Plaintiffs, such that to retain said benefit without compensation would be inequitable.

168.  Defendants devised and implemented a scheme to increase their profits by securing work from Plaintiffs without compensating them for all hours worked and without paying them an overtime premium.

169.  Contrary to all good faith and fair dealing, Defendants induced Plaintiffs to perform work while failing to compensate them properly for all hours worked as required by law, including overtime compensation.

170.  By paying Plaintiffs below the legally required wages for hours worked, Defendants received and benefited from the uncompensated labors of Plaintiffs, such that they were unjustly enriched at the expense of and to the detriment of the Plaintiffs.

171.  Defendants retained and continue to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

172.  Accordingly, Plaintiffs are entitled to judgment in the amount equal to the benefits unjustly retained by Defendants.

## NINTH CAUSE OF ACTION
### Intentional Interference with Contractual Relations
### Plaintiffs Adrian Reyes, Juan Reyes, Luis Roque, and Benjamin Ruiz Against All Defendants

173.  All previous paragraphs are incorporated as though fully set forth herein.

174.  Plaintiffs had prospective or agreed upon contractual relationships with third-party construction, paving, and landscaping companies.

175.  Defendants took purposeful action with the intent to harm the business relationship between Plaintiffs and these third-party companies.

176.  Defendants had no privilege or justification for these intentional attempts to undermine Plaintiffs' business relationships with third-party companies.

177.  Defendants' efforts to undermine these relationships were successful, preventing Plaintiffs from continuing to work with third-party companies.

178.  Consequently, Plaintiffs are entitled to actual damages resulting from Defendants' conduct.

## TENTH CAUSE OF ACTION
### Negligent Misrepresentation
### All Plaintiffs Against All Defendants

179.  All previous paragraphs are incorporated as though fully set forth herein.

180.  In order to induce Plaintiffs to provide labor to Defendants, Defendants represented to Plaintiffs that they would pay for all hours worked and that they would pay at agreed-upon wage rates (including overtime premiums, elevated operator rates, labor PWA rates, and operator PWA rates).

181.  Such representations were material in that Plaintiffs would not have provided labor had such representations not been made.

182. Such representations were false in that Defendants did not make, and still have not made, the payments they represented they would make.

183. Such representations were made by Defendants under circumstances in which Defendants ought to have known their falsity, and/or they failed to exercise reasonable care in communicating these representations to Plaintiffs.

184. Defendants made these representations to Plaintiffs with an intent to induce Plaintiffs to act upon them, to the benefit of Defendants.

185. In justifiable reliance upon the materials representations of Defendants, Plaintiffs provided labor to Defendants.

186. As a result of these representations, Plaintiffs have been financially damaged.

**ELEVENTH CAUSE OF ACTION**
**Race, Color, and/or National Origin Discrimination**
**Pay Discrimination in Violation of Title VII**
**Plaintiffs Adrian Reyes, Juan Reyes, Luis Roque, and Benjamin Ruiz Against All Defendants**

187. All previous paragraphs are incorporated as though fully set forth herein.

188. Defendants engaged in unlawful discrimination on the basis of race, color, and/or national origin in violation of Section 703(a) of Title VII of the Civil Rights Act, as amended. *See* 42 U.S.C. § 2000e-2(a).

189. The effect of the conduct described in ¶¶ 65-106, *supra*, has been to deprive Plaintiffs of equal employment opportunities and otherwise adversely affect their status as employees because of their race, color, and/or national origin.

190. These unlawful employment practices resulted in Plaintiffs being subject to unlawful pay practices solely because of their race, color, and/or national origin.

191. The unlawful employment practices described in ¶¶ 65-106, *supra*, were intentional.

192. The unlawful employment practices described in ¶¶ 65-106, *supra*, were done with malice or with reckless indifference to Plaintiffs federally protected rights.

193. As a direct and proximate result of Defendants' unlawful employment practices, Plaintiffs have suffered damages, including lost wages and benefits, emotional distress, humiliation, inconvenience, and like injuries.

### TWELFTH CAUSE OF ACTION
**Race, Color, and/or National Origin Discrimination**
**Harassment and Discrimination in Violation of Title VII**
**Plaintiffs Adrian Reyes, Juan Reyes, Luis Roque, and Benjamin Ruiz Against All Defendants**

194. All previous paragraphs are incorporated as though fully set forth herein.

195. Defendants engaged in unlawful discrimination on the basis of race, color, and/or national origin in violation of Section 703(a) of Title VII of the Civil Rights Act, as amended. *See* 42 U.S.C. § 2000e-2(a).

196. The effect of the conduct described in ¶¶ 65-106, *supra*, has been to deprive Plaintiffs of equal employment opportunities and otherwise adversely affect their status as employees because of their race, color, and/or national origin.

197. These unlawful employment practices created a hostile work environment.

198. These unlawful employment practices resulted in physical and emotional pain and suffering, embarrassment, and humiliation to Plaintiffs.

199. The unlawful employment practices described in ¶¶ 65-106, *supra*, were intentional.

200.  The unlawful employment practices described in ¶¶ 65-106, *supra*, were done with malice or with reckless indifference to Plaintiffs federally protected rights.

201.  As a direct and proximate result of Defendants' unlawful employment practices, Plaintiffs have suffered damages, including lost wages and benefits, emotional distress, humiliation, inconvenience, and like injuries.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief:

1.      Monetary damages for unpaid wages and unpaid overtime in an amount to be determined at trial, plus liquidated damages in an equal amount and interest, as provided by the FLSA, 29 U.S.C. § 216(b);

2.      Damages to Plaintiffs for unpaid regular and overtime wages, in accordance with the PMWA, 43 P.S. § 333.113;

3.      Damages to Plaintiffs for actual and statutory liquidated damages in accordance with the WPCL, 43 P.S. §§ 260.9a-260.10;

4.      The full value of wages Plaintiffs would have received had it not been for Defendants' discriminatory and unlawful treatment of Plaintiffs, with interest until the date Plaintiffs are offered employment into a position substantially equivalent to the one that Plaintiffs occupied;

5.      Reinstatement into the positions Plaintiffs held, together with all benefits incident thereto;

6.      Front pay in the event reinstatement is not feasible;

7.      Compensatory damages against Defendants to compensate Plaintiffs for emotional distress, humiliation, inconvenience, and like injuries;

8.      Punitive damages to punish Defendants and to deter Defendants and others from like conduct;

9.      Damages to Plaintiffs in accordance with their contract law claims;

10.     Damages to Plaintiffs for unjust enrichment;

11.     Damages to Plaintiffs for intentional interference with contractual relations;

12.     Damages to Plaintiffs for negligent misrepresentation;

13.     Liquidated and statutory damages to the fullest extent permitted under the law;

14.     Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

15.     Such other and further relief as this Court deems just and proper.

Dated: September 17, 2021

Respectfully submitted,

By: /s/ Samuel H. Datlof
Samuel H. Datlof, Esq.
    PA ID#: 324716
    Email: sdatlof@justiceatworklegalaid.org
Liz Chacko, Esq.
    PA ID#: 95115
    Email: lchacko@justiceatworklegalaid.org
Justice at Work
990 Spring Garden Street, Suite 300
Philadelphia, PA 19123
Telephone: (215) 733-0878

Nina Menniti, Esq.
    PA ID#: 326828
    Email: nmenniti@justiceatworklegalaid.org
Justice at Work
5907 Penn Ave., Suite 320
Pittsburgh, PA 15206
Telephone: (215) 733-0878

*Attorneys for Plaintiff*