IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADRIAN ROSALIO REYES OVALLE,** *et al.* | : | CIVIL ACTION |
| | : | |
| | : | |
| **v.** | : | NO.  21-3591 |
| | : | |
| **HARRIS BLACKTOPPING, INC.,** *et al.* | : | |

## MEMORANDUM

KEARNEY, J.                                                   December 22, 2021

Six brown-skinned workers allege their former employer Harris Paving and its officers violated federal and state wage laws by failing to properly pay the correct wage and for overtime, violated federal civil rights statutes by discriminating against them because of their race, color, and national origin, and created a hostile work environment constructively discharging them from employment. The workers also bring contract and tort claims under Pennsylvania law. Harris Paving and its officers move to dismiss all but disparate treatment discrimination claims. The Workers have now filed three complaints attempting to plead their claims but today's review is the first time we reviewed their broadly-plead allegations. The Workers cannot plead formulas and then lump Harris Paving and its officers together for all claims. They need to carefully review their claims as to each party they sue. But they sufficiently plead claims against Harris Paving for failing to pay overtime under the Fair Labor Standards Act and Pennsylvania Minimum Wage Act.  They also state a claim against Harris Paving for violating Pennsylvania's Wage Payment and Collection Law. They do not sufficiently plead claims against the officers, hostile work environment claims, or under Pennsylvania common law claims. We grant leave to timely amend the dismissed claims except for the failure to keep records claim.

I.      **Alleged facts**

Harris Blacktopping, Inc. d/b/a Harris Paving provides asphalt paving, construction, landscaping, and resurfacing services.[1] It pays different hourly rates to its workers depending on the type of project and work performed.[2] It pays employees working on public works contracts and those operating large machinery at a significantly higher hourly rate than employees who perform manual labor like shoveling and raking asphalt.[3]

Harris Paving employed Adrian Rosalio Reyes Ovalle, Juan Mario Reyes Ovalle, Miguel Angel Reyes Ovalle, Luis Miguel Roque Ovalle, Benjamin Ruiz Vazquez, and Patrick Ulupano ("Workers") at various times between 2014 and 2020.[4] These Workers are Latino, brown-skinned, and of Mexican origin.[5] Patrick Ulupano is a Pacific Islander, brown-skinned, and of Samoan origin.[6] Mr. Ulupano is the brother-in-law of Adrian Reyes and alleges Harris Paving perceived him as Mexican because of his familial relationship to Adrian Reyes.[7]

Harris Paving agreed to provide the Workers with paid vacation days each year and paid unused vacation days.[8] The Workers kept track of their hours by writing in a notebook or on timecards and typically included the location of the job and whether the hours worked were performed under a public works contract to which Pennsylvania's Prevailing Wage Act applied.[9] Workers submitted their timesheets to Harris Paving and received pay at various hourly rates depending on the job assigned to them.[10] Harris Paving assigned each Worker an individual base hourly rate of pay when he began employment. Harris Paving increased the base rates slowly over time. For weekday work on non-public work contracts, Harris Paving agreed to pay each Worker his base rate for manual labor and an "elevated hourly rate" for operating machinery.[11] Harris Paving agreed to pay the Workers elevated hourly rates for manual "labor" and "operator" work

required by Pennsylvania's Prevailing Wage Act.[12] "Operator" rates are higher than "labor" rates under the Prevailing Wage Act.

Harris Paving "sometimes" paid the Workers at their base rates for work rather than at the operator rate, a Prevailing Wage Act labor rate, or a Prevailing Wage Act operator rate, and "sometimes" paid them at a Prevailing Wage Act labor rate for work that should have been paid at the Prevailing Wage Act operator rate.[13] The Workers submitted their recorded hours worked to Harris Paving, but often several hours of wages per week were "skimmed off the top" and missing from paychecks.[14]

The Workers typically worked more than forty hours between Monday and Friday, and regularly worked additional hours on weekends.[15] Harris Paving and its officers violated federal and state wage laws by failing to pay an overtime premium (one-and-a-half times regular rate of pay) for hours worked in excess of forty;[16] properly compensate for work performed on weekends in excess of forty hours;[17] pay for "off-the-clock" hours, travel time, and "skimmed hours" and pay minimum wage; and make, keep, and preserve complete records sufficient to determine the Workers' wages, hours, and other conditions of employment.[18]

Harris Paving failed to pay the Workers an overtime premium of one-and-a-half times the regular rate of pay for hours worked over forty in a workweek:[19]

| Patrick Ulupano | Week ending December 18, 2018 |
| Adrian Reyes | Week ending June 23, 2019 |
| Juan Reyes | Week ending June 23, 2019 |
| Miguel Reyes | Week ending June 23, 2019 |
| Benjamin Ruiz | Week ending June 23, 2019 |
| Luis Roque | Week ending August 30, 2020 |

Harris Paving and its officers required the Workers to work two or three weekends a month but then: instructed the Workers not to record their hours for weekend work; paid them at a daily rate on weekends rather than an hourly rate; did not tell Workers in advance the amount they would

be paid per day for weekend work; the Workers' effective hourly rate fell below their assigned base rate; Harris Paving paid them in cash; and Workers usually worked two to three weekends per month. The weekend work routinely caused Workers to work over forty hours per week. In each case, Workers worked more than forty hours between Monday and Friday and then worked additional hours over the weekend. Harris Paving did not pay overtime for these hours:[20]

| Patrick Ulupano | Week ending December 9, 2018 |
| Adrian Reyes | Week ending May 5, 2019 |
| Miguel Reyes | Week ending May 5, 2019 |
| Benjamin Ruiz | Week ending May 5, 2019 |
| Juan Reyes | Week ending May 17, 2020 |
| Luis Roque | Week ending May 17, 2020 |

Harris Paving expected the Workers to perform, but did not pay for, "off-the-clock" work before and after the workday, including loading trucks with equipment and materials before driving to a work site, travel time to work sites, and "skimmed hours" from workweeks.[21] In addition to its failure to pay for all hours worked and an overtime premium, Harris Paving failed to make, keep, and preserve records to determine their wages and hours in violation of the Fair Labor Standards Act[22] and Pennsylvania's Minimum Wage Act.[23]

Harris Paving subjected the Workers to unlawful and unfavorable pay practices because of their race, color, and national origin by: assigning them lower paying and more demanding tasks; failing to pay them for all hours worked; assigning a lower base rate of pay; failing to pay overtime; excluding them from public works projects to which higher wages were mandated by the Prevailing Wage Act; failing to pay at the Prevailing Wage Act labor and operator rates when assigned to such projects; failing to pay the operator rate to Workers who worked on machinery; excluding them from training needed to qualify for higher-paying operator jobs; requiring them to work on weekends and paying them for weekend work on a flat rate per day basis amounting to an hourly rate below base rates; imposing different timekeeping requirements; requiring them to

4

arrive at worksites before and after normal work day hours and drive to and from job sites without compensation; and restricting them from the start time at the beginning of seasonal work.[24] Harris Paving subjected the Workers to these unlawful and unfavorable practices because of their race, color, and national origin but did not subject non-Latino, white, and American employees to these unlawful practices.[25] Workers then earned less than their non-Latino, white, and American counterparts.

In addition to differing wages, Harris Paving officers Harry Harris and James Harris created a hostile work environment by: requiring the Workers to perform demanding physical labor on asphalt in the heat of the summer without lunch or water breaks on shifts sometimes exceeding ten consecutive hours; allowing non-Latino, white, and American employees to take the Workers' water or Gatorade without permission; allowing non-Latino, white, and American employees to take breaks for "multiple hours at a time" while prohibiting the Workers from taking breaks; permitting the Workers to use machinery only when non-Latino, white, and American employees were unavailable to use the machines; "threw asphalt on the ground for [Workers] to flatten" manually and without the use of machinery; failed to correct degrading and offensive comments, profanity, and insults used by non-Latino, white, and American co-workers, including terms such as "border hoppers," "mother******s," "grasshoppers," yelling "they're here" to police driving past work sites, telling the Workers to "go back to [their] country," accusing Workers of "stealing their jobs," and other commentary such as they "wanted to tell [President] Trump about [the Workers]."[26]

Harris Paving officers Harry Harris and James Harris witnessed these offensive statements made by non-Latino, white, and American co-workers but they failed to discipline the other employees and laughed at the abusive commentary.[27]

Harris Paving does not have a formal process for reporting discriminatory workplace conduct.[28] Workers on several occasions complained to James Harris but he failed to take action in response to their complaints.[29] After the Workers complained to James Harris in November 2019, James Harris offered to pay Adrian Reyes for additional work time at the beginning and end of the work day he earlier worked without compensation.[30] After paying Adrian Reyes for additional work time for approximately one week, Harris Paving stopped making those payments.[31]

Harris Paving terminated Worker Adrian Reyes's employment in September 2020.[32] Juan Reyes, Benjamin Ruiz, and Luis Roque allege a constructive discharge from Harris Paving shortly after Adrian Reyes's termination because of disparate pay and the continuing and escalating hostile work environment.[33] Harris Paving refused to pay the Workers for unused vacation hours as promised.[34] Harris Paving contacted other landscaping and construction contractors, including Blair Corporation, and told those companies not to hire Adrian Reyes, Juan Reyes, Benjamin Ruiz, and Luis Roque. Blair Corporation refused to hire the Workers after being contacted by Harris Paving.[35]

## II.    Analysis

The Workers now join together to sue Harris Paving and its President James W. Harris, Jr., Vice-President Harry A. Harris, and Treasurer Charles S. Harris seeking damages. They  claim: (1) wage payment claims in violation of the Fair Labor Standards Act and its state analog Pennsylvania's Minimum Wage Act; (2) violation of Pennsylvania's Wage Payment and Collection Law; (3) disparate treatment, hostile work environment, and constructive discharge based on race, color, and national origin in violation of 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e-2; and (4) Pennsylvania common law claims for breach of contract, unjust enrichment,

negligent misrepresentation, and intentional interference with contractual relations. Harris Paving and its officers move to dismiss all claims except the disparate treatment claims under section 1981 and Title VII against Harris Paving. [36]

###### A.    We dismiss in part the Fair Labor Standards Act and Pennsylvania Minimum Wage Act claims.

Workers claim Harris Paving and its officers: (1)  failed to pay an overtime premium for hours worked over forty in a workweek; (2) failed to properly pay Workers for weekend work including failure to pay Workers an overtime premium for hours worked over forty; (3) failed to pay for all hours worked, including "off-the-clock" work, hours "skimmed off" the top of each week, and travel time to and from jobs and failed to pay minimum wage; and (4) failed to make, keep, and preserve complete records sufficient to determine their wages, hours worked, and other conditions of employment in violation of the Fair Labor Standards Act ("FLSA")[37] and Pennsylvania Minimum Wage Act ("MWA").[38]

Harris Paving and its officers move to dismiss the overtime claims, off-the-clock and uncompensated travel time and other wage-related claims as lacking specific factual allegations and move to dismiss individual defendant officers James, Harry, and Charles Harris.

Congress requires an employer pay its employees a specified minimum hourly wage for work performed and one-and-a-half times the regular rate for hours worked in excess of forty hours per week.[39] Congress's "broad remedial purpose" in the Fair Labor Standards Act ensures "certain minimum labor standards" for workers through "federal minimum-wage, maximum hour, and overtime guarantees" which an employer cannot modify by contract.[40] One of the Act's "bedrock principles" requires an employer to pay employees for all hours worked.[41] An employer who violates the law "shall be liable to the employee or employees affected in the amount of their

unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."[42]

Like the Fair Labor Standards Act, Pennsylvania's Minimum Wage Act requires employers to pay a minimum hourly wage and overtime premium.[43] Pennsylvania's General Assembly passed its law to protect employees from "unreasonably low [wages] not fairly commensurate with the value of the services rendered."[44] An employee may bring a civil action to enforce the Minimum Wage Act. Pennsylvania's law applies to all employees in Pennsylvania including those subject to the Fair Labor Standards Act and the federal Act sets the "floor" rather than the "ceiling" of worker protection in Pennsylvania.[45] The Fair Labor Standards Act and Pennsylvania Minimum Wage Act are analyzed under the same framework.[46]

To state a prima facie case under the Fair Labor Standards Act, Workers must allege (1) they are "employee[s]" as defined by the Act; (2) Harris Paving and its officers are "engaged in commerce" as defined by Congress in the Act; and (3) Harris Paving did not pay the federal minimum wage or overtime compensation for hours worked in excess of forty in a given week.[47]

### 1.    Workers plead plausible overtime claims.

We deny Defendants' motion to dismiss the Workers' overtime claims. In *Davis v. Abington Memorial Hospital*, our Court of Appeals defined the standard to sufficiently state an overtime claim under the Fair Labor Standards Act.[48] To plausibly state an overtime claim under the Act, the Workers must allege they worked forty hours in a given workweek as well as uncompensated time above forty hours. Workers are not required to identify the exact dates and times of overtime worked.[49] An allegation a plaintiff "'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of ***those*** forty-hour weeks" is sufficient.[50]

Workers "must connect the dots between bare allegations of a 'typical' forty-hour workweek and bare allegations of work completed outside of regularly scheduled shifts, so that the allegations concerning a typical forty-hour week include an assertion that the employee worked additional hours during such a week …."[51]

Workers allege they worked more than forty hours in identified workweeks and Harris Paving did not pay overtime:

- Patrick Ulupano for weeks ending December 9 and December 16, 2018;

- Adrian Reyes for weeks ending May 5 and June 23, 2019;

- Miguel Reyes for weeks ending May 5 and June 23, 2019;

- Benjamin Ruiz for weeks ending May 5 and June 23, 2019;

- Juan Reyes for weeks ending June 23, 2019 and May 17, 2020; and

- Luis Roque for weeks ending May 17 and August 30, 2020.[52]

Harris Paving and its officers argue "[o]ther than those weeks" (and conceding those weeks sufficiently state an overtime claim), Workers fail to plausibly allege they worked more than forty hours in a workweek and were not paid overtime. This argument lacks merit based on a review of the allegations. Workers identify twelve weeks they worked more than forty hours and Harris Paving did not pay them overtime. This allegation is sufficient. We deny Harris Paving's motion as to the overtime claim.

> **2.      Workers do not plausibly plead a minimum wage claim and failure to pay for all hours worked.**

Workers allege Harris Paving and the individual Harris Defendants violated the Fair Labor Standards Act and Pennsylvania's Minimum Wage Act by (a) failing to pay all hours worked including off-the-clock, skimmed hours, and travel time, and (b) failing to pay minimum wage.

Congress requires Harris Paving pay the Workers a minimum wage of $7.25 an hour.[53] Workers allege Harris Paving knowingly failed to compensate them for all hours worked in violation of federal law.[54] Workers allege Harris Paving and its officers paid them at "various hourly rates" depending on the job[55] and "sometimes" paid them at their "base hourly rate of pay" for work that should have been compensated: (a) at the higher operator rate for operating machinery on weekdays on non-public work projects; (b) a labor rate for public work projects under Pennsylvania's Prevailing Wage Act rate; (c) an operator rate for public work projects under the Pennsylvania's Prevailing Wage Act; and Harris Paving failed to pay them for (d) "off-the-clock" work performed before and after the "official" work day, including travel time, loading equipment, and cleaning and preparing machinery, and (e) skimmed work hours depriving them of compensation for all hours worked.[56]

We liberally read these allegations as Harris Paving knowingly failed to compensate the Workers for all hours worked in violation of the minimum wage requirements. But the Workers fail to identify whether the complained-of pay practices resulted in a wage lower than the minimum wage required by Congress and Pennsylvania General Assembly. The Workers do not allege Harris Paving's failure to pay them at an incorrect rate or to pay them for all hours worked fell below the minimum wage of $7.25 per hour.

Workers may not recover wages for uncompensated hours work falling between the minimum wage and the overtime provisions.[57] This "gap time" is not covered by the Fair Labor Standards Act. "Gap time" "refers to time that is not covered by the overtime provisions because it does not exceed the overtime limit, and to the time that is not covered by the minimum wage provisions because, ***even though it is uncompensated, the employees are still being paid a***

***minimum wage when their salaries are averaged across their actual time worked***."[58] There is no cause of action for "pure" gap time wages for unpaid work during pay periods without overtime.[59]

Workers allege they "typically" worked more than forty hours between Monday and Friday and "regularly" worked additional hours on weekends and "routinely" worked more than forty hours over the course of a Monday through Sunday workweek.[60] We cannot plausibly infer the Workers seek to recover either uncompensated work ***or*** whether they were paid incorrect rates for work below the minimum wage during pay periods without overtime.

Workers focus on their unpaid overtime claims. They appear to argue allegations of uncompensated off-the-clock work, travel time, and skimmed hours resulted in their working in excess of forty hours in a workweek with uncompensated time in excess of forty hours. To the extent Workers' claims are based on Harris Paving's alleged failure to pay them for all hours worked resulting in a pay rate falling below the minimum wage (as seems to be pleaded), we grant Defendants' motion to dismiss this claim with leave to amend.

### 3. Workers fail to state a claim for failure to keep and maintain records.

Workers additionally allege Harris Paving and its officers failed to make, keep, and preserve complete records sufficient to determine their wages, hours, and other conditions of employment under the Fair Labor Standards Act.

Congress requires employers to "make, keep and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make sure reports therefore to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder."[61]

There is no private right of action to enforce Congress's recordkeeping requirements.[62] The enforcement of the recordkeeping requirement is vested in the Secretary of Labor.[63] We dismiss the Workers' recordkeeping claims with prejudice because amendment of this claim is futile.

**4.      We dismiss the minimum and overtime wage claims against officers.**

Harris Paving officers James Harris, Charles Harris, and Harry Harris move to dismiss the minimum and overtime wage claims against them. Workers read the Harrises' motion to seek dismissal against Charles Harris only.[64] Although not well developed, the individual Harrises seek dismissal of all claims against each of them individually.

Congress imposes liability on an "employer." It defines employer as including a "person acting directly or indirectly in the interest of an employer in relation to an employee …"[65] "Aside from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the [Act]."[66] An individual may be liable if he exercises "'supervisory authority over the complaining employee and [is] responsible in whole or part for the alleged violation' while acting in the employer's interest."[67] We focus on the "totality of the circumstances rather than on the technical concepts of the employment relationship."[68] The term "'employ' includes to suffer or permit to work."[69]

Our Court of Appeals directs us to broadly construe the Act's definitions: "When determining whether someone is an employee under the [Act], 'economic reality rather than technical concepts is to be the test of employment.' Under this theory, [Congress] defines employer 'expansively,' and with 'striking breadth.' The Supreme Court has even gone so far as to acknowledge that [Congress's] definition of an employer is 'the broadest definition that has ever been included in any one act.'"[70]

To determine whether a person or entity is responsible for a single employee's wages as "joint employers," we are directed to consider a non-exhaustive list of relevant factors: "(1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes."[71]

Workers allege:

- James Harris, President of Harris Paving, "acted on his own behalf and/or behalf of" Harris Paving; is "jointly and severally liable" with Harris Paving, Harry Harris, and Charles Harris; and when Harris Paving hired Adrian Reyes in 2014, James Harris told Adrian Reyes he would be hired as a machine operator but instead assigned him manual labor work.[72]

- Harry Harris, Vice President of Harris Paving, "acted on his own behalf and/or behalf of" Harris Paving; is "jointly and severally liable" with Harris Paving, James Harris, and Charles Harris; and when Harris Paving hired Adrian Reyes in 2014, James Harris told Adrian Reyes he would be hired as a machine operator but instead assigned him manual labor work.[73]

- Charles Harris, Treasurer of Harris Paving, "acted on his own behalf and/or behalf of" Harris Paving and is "jointly and severally liable" with Harris Paving, James Harris, and Harry Harris.[74]

- "Defendants" knew Workers worked more than forty hours in a week because "Defendants" instructed Workers when are where to work, Defendants were typically present on work sites and communicated with Workers about work assignments.[75]

Other than bald assertions each of the Harrises are "employers" under the Act, the Workers offer no facts supporting the relevant factors considered under the *Enterprise* test. Workers lump "Defendants" together, ascribing alleged wage violations to both Harris Paving and its officers. Workers respond they allege Charles Harris is an employer under the Act and "therefore" he is

jointly and severally liable for Harris Paving's wrongdoing.[76] While Workers need not allege detailed or extensive allegations regarding the Harrises' alleged authority and supervision, they must allege each of the Harrises had some decision-making authority or involvement in day-to-day operations sufficient to draw a reasonable inference the Harrises are responsible for the alleged misconduct.[77] They fail to do so.

We grant the Harris Paving officers' motion to dismiss the minimum and overtime wage claims against them with leave to amend.

**B.      The Workers may proceed on their Pennsylvania Wage Payment and Collection Law claims against Harris Paving but not the officers.**

The Pennsylvania General Assembly requires employers to pay all wages due to employees on regular paydays earned in any pay period payable within the expiration of the pay period "as provided in a written contract of employment, or, if not so specified, within the standard lapse time customary in the trade or within 15 days from the end of such pay period."[78] An "employer" is defined as including "every person, firm, partnership, association, corporation, receiver … and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth."[79] "Wages" is defined as "all earnings of an employe[e], regardless of whether determined on time, task, piece, commission or other method of calculation. …"[80]

The General Assembly provides a civil remedy for employees "to whom any type of wages is payable to recover unpaid wages and liquidated damages."[81] The General Assembly does not create a right to compensation; it instead provides "a vehicle for employees to enforce payment of their wages and compensation held by their employers."[82]

To state a claim under the Act, Workers must allege a contractual entitlement "to compensation from wages" and a failure to pay the compensation.[83] Absent a formal employment contract, Workers must "establish, at a minimum, an implied oral contract between the employee

and the employer."[84] Under Pennsylvania law, "a contract implied in fact can be found by looking to the surrounding facts of the parties' dealings. Offer and acceptance need not be identifiable and the moment of formation need not be pinpointed. … Implied contracts … arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract."[85] "[A] promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service. … A promise to pay for services can only be implied, however, in circumstances under which the party rendering the services would be justified in entertaining a reasonable expectation of being compensated by the party receiving the benefit of those services."[86]

Harris Paving and its officers move to dismiss the Workers' Pennsylvania Wage Payment claims as a matter of law. They argue Workers summarily allege Harris Paving and its officers collectively failed to pay wages owed and do not allege or "even approximate" the number of uncompensated hours worked or wages due. They also argue Workers cannot "demonstrate" they are contractually entitled to "additional monies" and fail to plead facts to support an agreement between the Harris Paving and its officers (on one side) and each Worker.

Workers respond they plead the elements of an express contract by alleging the parties agreed to a base hourly rate of pay when each began employment with "Defendants," Defendants raised the base rates over time, Defendants agreed to pay the base rate for Workers' work, and Defendants agreed to an elevated hourly rate of pay when operating machinery on weekdays.[87] Workers contend even if we disagree they sufficiently pleaded an express contract, their pleading supports an implied contract. Workers also allege they recorded their hours worked in notebooks or on timecards and submitted those records to Harris Paving on a weekly basis.[88] Accepting all

facts as alleged in the second amended complaint at true, Workers at least state an implied employment agreement.

But we must dismiss the Wage Payment claims against the individual Defendants. Under the Act, an "employer" includes "any agent or officer" of a "firm, partnership, association, [or] corporation."[89] But agents or officers are not per se liable simply by holding a corporate office.[90] There must be "at a minimum, some indication that the defendant employer exercised a policy-making function in the company or an active role in the corporation's decision making process to be liable as an employer under the [Act.]"[91] For the reasons explained in our Fair Labor Standards Act analysis regarding the Harrises' individual liability, the Workers claims against the individual Defendants are dismissed. We deny Defendants' motion to dismiss the Wage Payment claim against Harris Paving. We grant their motion to dismiss the Wage Payment claim against the individual Defendants with leave to amend.

### C.    We dismiss the hostile work environment and constructive discharge claims under section 1981 and Title VII with leave to amend.

Workers combine section 1981 and Title VII claims against Harris Paving and James Harris and Harry Harris. They do not sue Charles Harris under section 1981 or Title VII.

All Workers allege disparate treatment by Harris Paving based on race, color, and national origin and a hostile work environment claim against Harris Paving, James Harris, and Harry Harris under 42 U.S.C. § 1981. Workers Juan Reyes, Luis Roque, and Benjamin Ruiz claim constructive discharge against Harris Paving under section 1981. Workers Adrian Reyes, Juan Reyes, Luis Roque, and Benjamin Ruiz allege disparate treatment discrimination and a hostile work environment against Harris Paving under Title VII, 42 U.S.C. § 2000e-2.[92]  Workers Juan Reyes, Luis Roque, and Benjamin Ruiz claim constructive discharge against Harris Paving in violation of Title VII.

Defendants do not move to dismiss the disparate treatment claims under section 1981 and Title VII. We analyze only the hostile work environment and constructive discharge claims.

Congress in section 1981 provides, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts … to the full and equal benefit of all laws … as is enjoyed by white citizens. …"[93]

Congress, under Title VII, defines "an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."[94]

Employment discrimination claims under section 1981 and Title VII cases are analyzed in the same way.[95] Workers claim a hostile work environment based on their race, color, and national origin.[96] They also claim Defendants constructively discharged them by creating a hostile work environment so intolerable as to force a reasonable employee to resign.[97]

To state a prima facie case for hostile work environment under either section 1981 or Title VII, Workers must allege: (1) they suffered intentional discrimination because of their race, color, or national origin; (2) severe or pervasive discrimination; (3) the discrimination detrimentally affected Workers; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) respondeat superior liability.[98] To establish constructive discharge, Workers "must show both a hostile work environment and that 'the abusive working environment became so intolerable that … resignation qualified as a fitting response.'"[99] When an "employee

resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge."[100] A hostile work environment claim is a predicate to a hostile work environment constructive discharge claim.[101]

A hostile work environment claim and a constructive discharge claim are distinct causes of action.[102] The parties' briefing conflates the two claims. Workers must first sufficiently allege a hostile work environment claim to reach the constructive discharge claim.

Defendants argue we must dismiss the hostile work environment claims because Workers "lump themselves" together and fail to plead the names, date, locations or witnesses to the conduct creating a hostile work environment and because there are no allegations of severe or pervasive discrimination. Workers respond they are not required to plead the dates, names, locations or witnesses of and to the alleged conduct, especially where Workers plead daily and weekly harassment over a period of months and years and plead Defendants James Harris and Harry Harris witnessed the harassment and did nothing to discipline or correct the alleged conduct.[103]

Defendants cite no authority for their argument Workers must plead names, dates, locations of, and witnesses to, the alleged discriminatory conduct to state a hostile work environment claim. The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint and to provide defendant with fair notice of the claims against it. Workers meet the pleading requirements of Rule 8.

Defendants' argument as to the elements of the hostile work environment claim fare better. Defendants challenge the second element of the claim—severe or pervasive discrimination. When determining whether an environment is hostile, we look at the "totality of the circumstances" including "the frequency of the discriminatory conduct; its severity; whether it is physically

18

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[104]

Workers allege a hostile environment because they are Latino, brown, and Mexican and treated differently than non-Latino, white, and American workers by being forced to perform grueling work in the sun in ten-hour shifts without breaks; excluded from operating machinery; James Harris and Harry Harris forced them to lay asphalt manually rather than by machine solely to demean Workers; endured epithets such as "border hoppers" and "grasshoppers" and "mother******s"; subjected to accusations such as "stealing jobs" from non-Latino workers, being told to "go back to [their] country," and statements by non-Latino workers to the effect they would "tell Trump about" Workers and threaten to call the police.[105]

The Workers' allegations of daily or weekly epithets such as "border hoppers" referring to Workers' Mexican national origin over a period of years is sufficient at this stage to constitute pervasive conduct. We are generally "reluctant to dismiss hostile work environment claims based on the severe or pervasive requirement ...."[106]

But the Workers do not allege facts allowing us to infer this alleged discrimination detrimentally affected Workers and the discrimination would detrimentally affect a reasonable person in like circumstances. Workers make those allegations in support of their constructive discharge claim, but **not** their hostile work environment claim. Workers allege after the discharge of Adrian Reyes in September 2020, the continuing hostile work environment at Harris Paving, of which James Harris and Harry Harris were aware, caused the constructive discharge of Juan Reyes, Benjamin Ruiz, and Luis Roque.[107] Workers allege a reasonable employee would have resigned. They allege suffering damages including lost wages, benefits, emotional distress, humiliation,

inconvenience, and like injuries.[108] Workers appear to conflate the two distinct claims and fail to allege a hostile work environment claim.

We dismiss Workers' hostile work environment and constructive discharge claims without prejudice to timely amend to plead separate claims consistent with the Law.

**D.      We dismiss the Workers' state law claims with leave to amend.**

Workers claim breach of contract, unjust enrichment, intentional interference with contractual relations, and negligent misrepresentation under Pennsylvania law. Defendants move to dismiss the state law claims.

**1.      We dismiss the breach of contract claims.**

The Workers assert two breach of contract claims. Worker Adrian Reyes alleged he and Defendants agreed he would perform operator duties and be paid at operator rates. He alleges Defendants breached the contract by assigning him primarily manual labor duties and paying him at the lower manual labor rate. He alleges he suffered financial loss.[109] All Workers allege they agreed with Defendants to provide labor, Defendants agreed to pay them at an agreed upon and legally mandated wage rate and pay them for any unused vacation time.[110] Workers allege Defendants breached their obligations by failing to: pay them for all hours worked; pay overtime; pay Workers at rates required by law; and pay unused vacation time. They allege they suffered financial loss.[111]

Defendants move to dismiss the breach of contract claims as a matter of law because Workers fail to plead "when, where, or with whom" their contracts were made and, in Adrian Reyes's claim, fail to "explain his entitled to damages beyond simply stating that because he never performed the 'operator' work (as he was allegedly promised he would), he never received the higher 'operator wages.'"[112]

Workers respond they plead an offer (Defendants will pay Workers at a particular rate in exchange for labor), acceptance (Workers agreed to work at the agreed-upon rate), and consideration (wages in exchange for labor). They contend they are not required to plead a separate paragraph and separate factual allegation as to each Defendant individually. Workers contend their global reference to "Plaintiffs" means all six Workers and references to "Defendants" means Harris Paving and the three Harrises individually.[113] Workers argue even if we disagree the parties had an express contract, they plead an implied contract. A contract implied in fact is a contract arising "where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances."[114]

There are three elements of a breach of contract claim under Pennsylvania law: (1) existence of a contract, including its essential terms; (2) breach of the contract; and, (3) resulting damage.[115] A contract "may be manifest orally, in writing, or as an inference from the acts and conduct of the parties."[116] Workers fail to sufficiently plead the terms of the alleged contracts and who entered the contracts. There are multiple alleged promises apparently forming the basis of the parties' alleged contracts: payment for all hours worked; payment of overtime; payment at rates required by law; payment of unused vacation time;[117] and, for Adrian Reyes, assignment of operator work.[118] We have no facts from which we could infer which Defendant or Defendants reached an agreement with a Worker. Workers cite their allegation at the beginning of their employment, Defendants agreed to pay a particular "base rate" as to each Worker for his work and additional rates to be paid and agreed to pay Workers at an elevated hourly rate of pay when operating machinery on the weekdays on public and non-public jobs.[119] There is no allegation of a contract to pay overtime or for all hours worked. As for Adrian Reyes, he pleads when hired

James Harris and Harry Harris "told [him] that he was being hired as a machine operator."[120] There is no allegation Charles Harris promised Adrian Reyes any particular job.

We have no idea of the essential terms of the contract or contracts between the six Workers and four Defendants. We grant the motion to dismiss the breach of contract claim with leave to amend.

### 2. We dismiss the unjust enrichment claims.

Workers claim Defendants received the benefit of the Workers' labor without compensation. There are three elements of an unjust enrichment under Pennsylvania law: "(1) [the] benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."[121] Whether unjust enrichment applies depends on the facts of each case and we do not focus "on the intention of the parties, but rather on whether the defendant has been unjustly enriched."[122] Workers "must show that the party against whom recovery is sought either 'wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.'"[123]

Defendants move to dismiss the unjust enrichment claim as a matter of law arguing the allegations are vague, lack detail, rely on generalized averments of failure to pay overtime, and are attempting to re-plead a failure to pay overtime under the guise of a quasi-contract theory. Workers disagree, citing their allegations they worked for Defendants who received the benefit of the work without compensation. We grant Defendants' motion to dismiss the unjust enrichment claim for the same reasons we dismiss the breach of contract claims.

**3.**     **We dismiss the intentional interference with contractual relations claims, but the Workers may proceed on the interference with prospective contractual relations.**

Workers Adrian Reyes, Juan Reyes, Luis Roque, and Benjamin Ruiz claim all Defendants interfered with "prospective or agreed upon contractual relationships" with third-party construction, paving, and landscaping companies. They allege after discharge from Harris Paving, they sought employment with multiple landscaping and construction contractors, identifying only Blair Corporation. Workers allege "Defendants" told "those companies," including Blair Corporation, not to hire them.[124] Workers allege Blair Corporation refused to hire them and but for Defendants' interference, Workers would have secured at least several months of full-time work with Blair Corporation.[125]

To state a claim for intentional interference with contractual relations, Workers must allege: "(1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct."[126] To state a claim for interference with ***prospective*** contractual relations, Workers must allege: "(1) a prospective contractual relationship; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct."[127]

Defendants argue the Workers fail to plead a current or prospective contractual relationship, facts supporting an inference of intent by Defendants to harm an existing contractual relationship or prevent a relationship from occurring, and actual legal damage for any of the four Workers. Workers respond they are not required to plead the name of the third-party with whom

23

they had contractual relationship, they had a prospective contractual relationship with Blair Corporation, and all Defendants – Harris Paving, James Harris, Harry Harris, and Charles Harris – contacted Blair Corporation to interfere with its hiring of Adrian Reyes, Juan Reyes, Luis Roque, and Benjamin Ruiz.

The first element of intentional interference with contractual relationship requires the existence of a contract between Workers and a third party. The Workers do not allege a contractual relationship with a third party, including Blair Corporation. The Workers do not allege a third party failed to perform under an existing contract with Workers.[128] We dismiss the intentional interference with contractual relations claim with leave to amend.

Workers' claim appears to be based on interference with prospective contractual relations. They allege Blair Corporation refused to hire them after Defendants' interference. A prospective contractual relation under Pennsylvania law is "something less than a contractual right, but something more than a mere hope."[129] Because prospective relationships are "not susceptible of a definite, exacting identification," Workers are not required to identify a potential contractual party by name.[130] Workers identified Blair Corporation specifically and also allege they sought work with "multiple landscaping and construction companies" but, after Defendants' interference with the intent to harm and without justification, these prospective employers did not hire them. The Workers allege Adrian Reyes, Juan Reyes, Benjamin Ruiz, and Luis Roque lost at a minimum several months of pay for full time work, at least from Blair Corporation.

The Workers plead interference with prospective contractual relations. We deny Defendants' motion to dismiss the interference with prospective contractual relations claim.

### 4.    We dismiss the negligent misrepresentation claim.

All Workers claim all Defendants negligently misrepresented pay rates when they hired the Workers. Defendants argue the Workers fail to allege who made the alleged misrepresentations, in what capacity the misrepresentations were made, and when such misrepresentations were made. Workers allege Defendants misrepresented the pay rates to Adrian Reyes when first hired in 2014, continued to make misrepresentations regarding pay rates to each of the Workers upon hiring, and made these representations knowing they were false and with the intent to induce Workers to act.[131] These allegations also sound in contract as it appears Harris Paving and its officers made promises and breached those promises.

Harris Paving and its officers do not argue the fraud claim is barred by the contract claim.[132] So we focus on whether the Workers state a claim for negligent misrepresentation under Pennsylvania law. They must allege: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the actor should have known of its falsity; (3) with an intent to induce another to act on it; (4) thereby causing injury to a party who justifiably relied upon the misrepresentation."[133]

The first element requires a misrepresentation of a material fact. The Workers allege Defendants "represented to Workers that they would pay for all hours worked and that they would pay at agreed-upon wages (including overtime premiums, elevated operator rates, labor PWA rates, and operator PWA rates)."[134] In response to Defendants' argument this is a formulaic recitation of the elements without supporting facts, Workers direct us to paragraphs 55 through 57. But those allegations do not allege a misrepresentation of a material fact; there are no statements by Defendants "they would pay [Workers] for all hours worked and that they would pay at agreed-upon wages" including overtime premiums and other rates. Workers allege Defendants agreed to

pay Workers a certain base rate; an operator rate; elevated hourly rates; and rates mandated by the Pennsylvania Prevailing Wage Act for labor and operators.[135] There are no pleaded misrepresentations regarding the base rate or other rates. The various hourly rates Defendants allegedly agreed to are the basis of Workers' breach of contract and unjust enrichment claims. Workers claim these same agreements are a misrepresentation of a material fact. Workers do not cite specific representations, facts suggesting each of the Defendants should have known of the falsity, with the intent to induce Workers to act, and justifiable reliance.

We dismiss the negligent misrepresentation claim with leave to amend if the Workers can plead a negligent misrepresentation claim not covered by the breach of contract claim.

## III.    Conclusion

The Workers plead claims against Harris Paving under the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, and the Pennsylvania Wage Payment and Collection Law. They do not sufficiently plead their remaining challenged claims. We grant the Workers leave to timely amend the dismissed claims except for the failure to keep records claim.

---

[1] ECF Doc. No. 14, Second Amended Complaint ¶ 47.

[2] *Id.* ¶ 48.

[3] *Id.*

[4] *Id.* ¶¶ 12-25.

[5] *Id.* ¶¶ 13, 16, 18, 20, 22.

[6] *Id.* ¶ 24.

[7] *Id.* ¶ 25.

[8] *Id.* ¶ 51.

[9] 43 Pa. Stat. § 165, *et seq*. Pennsylvania's Prevailing Wage Act applies to construction projects under a contract paid for in whole or in part by public funds where the estimated cost of the total project exceeds $25,000. 42 Pa. Stat. § 165-2. The Act requires the "prevailing minimum wage," determined by Pennsylvania's Secretary of Labor and Industry, must be paid to all workers employed on public works projects. *Id.* §§ 165-5, 165-7.

[10] ECF Doc. No. 14 ¶¶ 54, 55.

[11] *Id.* ¶ 55.

[12] *Id.*

[13] *Id.* ¶¶ 56, 57.

[14] *Id.* ¶ 58.

[15] *Id.* ¶¶ 59, 60.

[16] *Id.* ¶ 62.

[17] *Id.* ¶ 63.

[18] *Id.* ¶¶ 64-68, 119-31.

[19] *Id.* ¶ 62.

[20] *Id.* ¶ 63.

[21] *Id.* ¶¶ 58 (skimmed hours), 64 (off-the-clock work), 65-66 (travel time).

[22] 29 U.S.C. §§ 206, 207.

[23] 43 Pa. Stat. § 333.102, *et seq*.

[24] ECF Doc. No. 14 ¶¶ 67-91.

[25] *Id.* ¶¶ 92-101.

[26] *Id.*

[27] *Id.* ¶¶ 103-06.

[28] *Id.* ¶¶ 107-08.

[29] *Id.* ¶¶ 109-10.

---

[30] *Id.* ¶ 111.

[31] *Id.*

[32] *Id.* ¶ 112.

[33] *Id.* ¶ 112, 166-73.

[34] *Id.* ¶ 113.

[35] *Id.* ¶¶ 114-17.

[36] ECF Doc. No. 16. Harris Paving and its officers moved for an extension of time to file a reply in further support of their Motion. We granted their motion (ECF Doc. No. 19), but Defendants never filed a reply brief.

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim has facial plausibility when the plaintiff pleads factual content … allow[ing] the court to draw the reasonable inference … the defendant is liable for the misconduct alleged." *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C.*, 806 F. App'x at 152 (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v.*

*Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[37] 29 U.S.C. §§ 206, 207.

[38] 43 Pa. Stat. §§ 333.104(a), (a)(1).

[39] *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 305-06 (3d Cir. 2003). Section 206(a)(1) of the FLSA provides: "Every employer shall pay to each of his employees who in a workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the … rat[e] … [of] … not less than – $7.25 an hour …" 29 U.S.C. § 206(a)(1). Section 207(a) of the FLSA provides: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

[40] *Smiley v. E.I. Dupont De Nemours and Co.*, 839 F.3d 325, 329-30 (3d Cir. 2016) (quoting *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 373 (3d Cir. 2007), *cert. denied*, 553 U.S. 1093 (2008)); *Mitchell v. Robert DiMaria Jewelry, Inc.*, 361 U.S. 288, 292 (1960); and *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)).

[41] *Smiley*, 839 F.3d at 330 (citing 29 C.F.R. § 778.223). Section 778.223 of the federal regulations requires "an employee must be compensated for all hours worked" including "(1) [a]ll time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace; and (2) [a]ll time during which an employee is suffered or permitted to work whether or not he is required to do so."

[42] 29 U.S.C. 216(b).

[43] 43 Pa. Stat. §§ 333.101 *et seq.*

[44] *Id.* § 333.101. Like its federal counterpart, section 333.104(a) of the Pennsylvania MWA requires every employer to "pay each of his or her employe[e]s wages for all hours worked at a rate of not less than … the minimum wage set by the [FLSA] …." 43 Pa. Stat. §§ 333.104(a), (a.1). Section 231.21 of Pennsylvania's Administrative Code requires employers pay minimum wage for hours worked regardless of whether the wage is paid on an hourly, salaried, commissioned, piece rate, or any other basis. 34 Pa. Code. § 231.21(b). Section 333.104(c) requires every employer to pay its employee "for overtime not less than one and one-half times the employe[e]'s regular rate …." 43 Pa. Stat. § 333.104(c).

[45] *Chevaliar v. Gen. Nutrition Ctr's, Inc.*, 177 A.3d 280, 295-96 (Pa. Super. Ct. 2017) (citing *Bayada Nurses, Inc. v. Pa. Dep't of Labor & Indus.*, 8 A.3d 866, 883 (Pa. 2010)).

[46] *Bansept v. G&M Automotive*, No. 18-4679, 2021 WL 3784241, at *3 (E.D. Pa. Aug. 26, 2021).

[47] *Razak v. Uber Tech., Inc.*, No. 16-573, 2016 WL 5874822, at * 3 (E.D. Pa. Oct. 7, 2016) (citing 29 U.S.C. § 216(b); *Mell v. GNC Corp.*, No. 10-945, 2010 WL 4668966, at * 5 (W.D. Pa. Nov. 9. 2010)).

[48] 765 F.3d 236, 242-43 (3d Cir. 2014).

[49] *Id.*

[50] *Id.* at 243 (emphasis in original).

[51] *Id.* at 243 n.7.

[52] ECF Doc. No. 14 ¶¶ 62, 63.

[53] 29 U.S.C. § 206(a)(1)(C); 43 Pa. Stat. § 333104(a.1).

[54] ECF Doc. No. 14 ¶ 126. Section 778.112 of the federal regulations are contained in the overtime pay requirements providing for the computation for overtime pay based on an employee's "regular rate." Section 778.112, governing "day rates and job rates," provides: "If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek." 29 C.F.R. § 778.112. It is unclear how this regulation pertaining to computing overtime pay relates to Workers' claimed violation of Section 206.

[55] ECF Doc. No. 14 ¶ 55.

[56] ECF Doc. No. 14 ¶¶ 55-58, 64-66, 126.

[57] *Davis*, 765 F.3d at 243.

[58] *Id.* (quoting *Adair v. City of Kirkland*, 185 F.3d 1055, 1062 n.6 (9th Cir. 1999)) (emphasis added).

[59] *Davis*, 765 F.3d at 244.

[60] ECF Doc. No. 14 ¶¶ 59-60.

[61] 29 U.S.C. § 211(c).

[62] *Lopez v. Tri-State Drywall, Inc.*, 861 F. Supp. 2d 533, 536-37 (E.D. Pa. 2012) (collecting cases).

[63] *Id.* at 537. Like the FLSA, Pennsylvania's MWA requires covered employers to maintain records or hours worked and wages paid. 43 Pa. Stat. § 333.108. Pennsylvania's Secretary of Labor is vested with the power to enforce the MWA. *Id.* § 333.109. The MWA provides a private right of action to employees to enforce minimum wage and overtime violations. *Id.* § 333.113.

[64] ECF Doc. No. 17-1 at 9, n. 4.

[65] *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014) (quoting 29 U.S.C. § 203(d)). Similarly, under the Pennsylvania MWA, an "employer" is defined as "any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe[e]." 43 Pa. Stat. § 333.103(g).

[66] *Thompson*, 748 F.3d at 153.

[67] *Thompson*, 748 F.3d at 153 (quoting *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012)) (applying to the FLSA concepts of joint employer liability from Family Medical Leave Act).

[68] *Thompson*, 748 F.3d at 154 (quoting *Haybarger*, 667 F.3d at 418).

[69] 29 C.F.R. § 203(g).

[70] *Thompson*, 748 F.3d at 148 (quoting *In re Enterprise Rent–A–Car Wage & Hour Emp't Prac. Litig.*, 683 F.3d 462, 467–68 (3d Cir. 2012)).

[71] *Thompson*, 748 F.3d at 149 (quoting *In re Enterprise*, 683 F.3d at 469) (the "*Enterprise* test"). The parties do not provide us with Pennsylvania cases or federal cases applying Pennsylvania law on the test for determining an "employer" under the MWA. Courts in this District apply the "operational control" test; an individual must have "operational control of a corporation's covered enterprise" to be held liable as an "employer" under the MWA. *See Hernandez v. Ashley Furniture Indus, Inc.*, No. 10-5459, 2012 WL 3526617, at *3 (E.D. Pa. Aug. 14, 2012; *Pagan v. New Wilson's Meats, Inc.*, No. 08–751, 2008 WL 3874720, at *5 (E.D. Pa. Aug. 19, 2008).

[72] ECF Doc. No. 14 §§ 30, 34-35, 78-79.

[73] *Id.* §§ 30, 39-40, 78-79.

[74] *Id.* §§ 30, 44-45.

[75] *Id.* § 61.

[76] ECF Doc. No. 17-1 at 9, n.4.

[77] *SeYoung Ra v. Gerhard's, Inc.*, No. 17-5211, 2019 WL 95473 (E.D. Pa. Jan. 3, 2019). In *SeYoung Ra*, plaintiff alleged individual defendants are President, Vice President, and Corporate

Secretary of Gerhard's Inc. and all three are principal owners who maintain operational control over the company's daily operations and business activities with the power to hire and fire employees, supervise and control employees' work schedules, have an active role in corporate advising, policy-making and decision-making, determine the rate and method of employee compensation, and maintain responsibility for compensation and employment records. *Id.* at *6. Judge Goldberg found these allegations sufficient to draw a plausible inference the individual defendants controlled day-to-day operations and are "employers" under the FLSA. There are no such allegations here.

[78] 43 Pa. Stat. § 260.3(a).

[79] 43 Pa. Stat. § 260.2a.

[80] *Id.*

[81] *Id.* § 260.9a.

[82] *Grimm v. Universal Med. Servs., Inc.*, 156 A.3d 1282, 1290 (Pa. Super. Ct. 2017) (quoting *Hartman v. Baker*, 766 A.2d 347, 352 (Pa. Super. Ct. 2000)).

[83] *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 (Pa. Super. Ct. 2011), *aff'd*, 106 A.3d 656 (Pa. 2014) (quoting *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005) and *Hartman*, 766 A.2d at 352)).

[84] *Braun*, 24 A.3d at 954 (citing *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003)).

[85] *Sam Mannino Enter., Inc. v. Anadarko Petroleum Corp., Inc.*, No. 1123 MDA 2020, 2021 WL 5027391, at *3–4 (Pa. Super. Ct., Oct. 29, 2021) (quoting *Ingrassia Const. Co. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. Ct. 1984)).

[86] *SeYoung*, 2019 WL 95473 at *13 (quoting *Oxner v. Cliveden Nursing and Rehab. Ctr. PA, L.P.*, 132 F. Supp. 3d 645, 649 (E.D. Pa. 2015)).

[87] ECF Doc. No. 14 ¶ 55.

[88] ECF Doc. No. 14 ¶¶ 52-54.

[89] 43 Pa. Stat. § 260.9a.

[90] *Altmanshofer v. Display Source Alliance, LLC*, No. 20-876, 2020 WL 7229778,  at *3 (M.D. Pa. Dec. 8, 2020).

[91] *Britton v. Whittmanhart, Inc.*, No. 09-1593, 2009 WL 1855325, at * 3 (E.D. Pa. June 25, 2009) (citing *Mohney v. McClure*, 568 A.2d 682, 686 (Pa. Super. Ct. 1990)).

[92] Title VII requires a plaintiff to exhaust his administrative remedies by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and receiving a right-to-sue letter from the EEOC before seeking relief in federal court. *Simko v. United States Steel Corp.*, 992 F.3d 198, 206-07 (3d Cir. 2021). Of the six Workers, only four filed Charges with the EEOC and received a right-to-sue letter: Adrian Reyes, Juan Reyes, Luis Roque, and Benjamin Ruiz. These four Workers allege claims under Title VII. Section 1981 does not have an administrative exhaustion requirement.

[93] 42 U.S.C. § 1981.

[94] 42 U.S.C. § 2000e-2(a).

[95] *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (citing *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009)).

[96] All Workers allege a hostile work environment claim against Harris Paving and the individual Defendants. Workers Adrian Reyes, Juan Reyes, Luis Roque, and Benjamin Ruiz allege a hostile work environment claim against Harris Paving only.

[97] ECF Doc. No. 14 ¶¶ 170, 225.

[98] *Castleberry*, 863 F.3d at 263 (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)).

[99] *Lewis v. Univ. of Pennsylvania*, 779 F. App'x 920, 922 (3d Cir. 2019) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 133–34 (2004)).

[100] *Green v. Brennan*, 578 U.S. 547, 555 (2016) (citing *Suders*, 542 U.S. at 142-43).

[101] *Suders*, 542 U.S. at 149.

[102] *Green*, 578 U.S. at 559 (citing *Suders*, 542 U.S. at 149).

[103] ECF Doc. No. 14 ¶¶ 102-06.

[104] *Castleberry*, 863 F.3d at 264 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

[105] ECF Doc. No. 14 ¶¶ 92-106.

[106] *Giovanni v. Bayer Properties, LLC*, No. 20-2215, 2021 WL 4078055, at *5 (E.D. Pa. Sept. 8, 2021) (citing *Zielinski v. Kimberly-Clark Corp.*, No. 15-3053, 2016 WL 3519709, at *10 (E.D. Pa. June 28, 2016)).

[107] ECF Doc. No. 14 ¶ 170.

[108] *Id.* ¶¶ 170, 172.

[109] *Id.* ¶¶180-85.

[110] *Id.* ¶¶ 175-76.

[111] *Id.* ¶¶ 177-79.

[112] ECF Doc. No. 16 at 13.

[113] ECF Doc. No. 17-1 at 11 n.6.

[114] *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009) (quoting *Elias v. Elias*, 237 A.2d 215, 217 (Pa. 1968)).

[115] *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citing *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)).

[116] *Id.*

[117] ECF Doc. No. 14 ¶ 177.

[118] *Id.* ¶ 181.

[119] *Id.* ¶ 55.

[120] *Id.* ¶ 78.

[121] *Meyer, Darragh, Buckler, Bebeneck & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 179 A.3d 1093, 1102 (Pa. 2018) (quoting *Shafer Elec. & Const. v. Mantia*, 96 A.3d 989, 993 (Pa. 2014)).

[122] *Kenney v. Am. Bd. of Internal Med.*, 847 F. App'x 137, 148 (3d Cir. 2021) (quoting *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993)).

[123] *Kenney*, 847 F. App'x at 148 (quoting *Torchia ex rel. Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985)).

[124] ECF Doc. No. 14 ¶ 114.

[125] *Id.* ¶ 117.

[126] *Salsberg v. Mann*, No. 623 EDA 2019, 2021 WL 4191267, at *2 (Pa. Super. Ct. Sept. 25, 2021) (publication in Atlantic Third forthcoming) (quoting *Phillips v. Selig*, 959 A.2d 420, 429 (Pa. Super. Ct. 2008)).

---

[127] *Salsgiver Commc'n, Inc. v. Consol. Commc'ns Holdings, Inc*., 150 A.3d 957, 964 (Pa. Super. Ct. 2016) (quoting *Foster v. UPMC South Side Hosp*., 2 A.3d 655, 665 (Pa. Super. Ct. 2010)).

[128] *See e.g. Dreiling Millennium Trust II v. Reliant Renal Care, Inc.,* 833 F. Supp. 2d 429, 434 (E.D. Pa. 2011) (finding "the bulk of the case law [interpreting intentional interference with contractual relations claim], as well as the plain language of the Restatement (Second) of Torts section 766, mandates that a plaintiff bringing an intentional interference claim must allege breach or nonperformance.").

[129] *Synthes (USA) v. Globus Med., Inc.*, No. 04-1235, 2005 WL 2233441, at * 7 (E.D. Pa. Sept. 14, 2005) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979)).

[130] *Id.* (collecting cases).

[131] ECF Doc. No. 14 ¶¶ 55-57, 199-206.

[132] Pennsylvania courts have long applied the "gist of the action" doctrine to bar plaintiffs from recasting contract claims as tort claims. *Bruno v. Erie ins. Co.*, 106 A.3d 48, 60-70 (Pa. 2014) (history of the gist of the action doctrine in Pennsylvania). The doctrine bars a claim sounding in tort which "is in actuality a claim for breach of contractual obligations." *Patel v. Kandola Real Estate, LP*, No. 260 MDA 2021, 2021 WL 5173445, at *8 (Pa. Super. Ct. Nov. 8, 2021) (publication in the Atlantic Reporter 3d forthcoming) (citing *Bruno*, 106 A.3d at 53). The Pennsylvania Supreme Court defined the test for applying the gist of the action doctrine: "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract – *i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract – then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." *Earl v. NVR, Inc.*, 990 F.3d 310, 315 (3d Cir. 2021) (quoting *Bruno*, 106 A.3d at 68). At this stage of the proceeding, we recognize our colleagues exercise "'caution' when 'dismissing a tort action on a motion to dismiss because whether tort and contract claims are separate and distinct can be a factually intensive inquiry." *Foundation for Eldercare v. Crescenzo*, No. 20-2190, 2021 WL 2953144, at *6 (E.D. Pa. July 14, 2021) (quoting *Takiedine v. 7-Eleven, Inc.*, No. 17-4518, 2019 L 934994, at *14 (E.D. Pa. Feb. 25, 2019)). We allow Workers to amend their negligent misrepresentation claim mindful of Pennsylvania's gist of the action doctrine.

[133] *Gregg v. Ameriprise Fin., Inc*., 245 A.3d 637, 646 (Pa. 2021) (*Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999)).

[134] ECF Doc. No. 14 ¶ 200.

[135] *Id.* ¶ 55.